3. Based upon my training and experience, I am familiar with the methods of operation employed by narcotics traffickers operating at the local, statewide, national and international levels, including those involving the distribution, storage and transportation of narcotics and the collection of monies that constitute the proceeds of narcotics trafficking activities.

## PROCEDURAL HISTORY

4. On August 5, 2013, the Honorable David H. Hennessey, Magistrate Judge for the District of Massachusetts, authorized a criminal complaint charging Marshall H. DION with conspiracy to distribute marijuana, in violation of 21 U.S.C. §846 (*United States v. Marshall Herbert Dion*, Dkt. No. 13-mj-4114-DHH). On September 5, 2013, a Boston, Massachusetts federal grand jury returned a three-count indictment, charging Marshall Herbert DION, William Landolfi, and Glenn Freeman with conspiracy to possess with intent to distribute, and to distribute, one thousand kilograms or more of marijuana, in violation of 21 U.S.C. §846 (Count One); Marshall H. DION with possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1) (Count Two); William Landolfi with possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1) (Count Three); and Glenn Freeman with possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a)(1) (Count Four) (Dkt. # 13-10258-DJC).

## PURPOSE OF AFFIDAVIT

5. The purpose of this Affidavit is to set forth probable cause in support of my applications for search warrants authorizing the search and seizure of evidence of the crimes of conspiracy to possess with intent to distribute marijuana, possession with intent to distribute

2

marijuana and money laundering, all in violation of 21 U.S.C. §§846 and 841 and 18 U.S.C. §§1956 and 1957 (herein, the "Target Offenses") from:

    a.    the following electronic items, which have been assigned an FBI non-drug exhibit number (e.g., 1B1), all of which were seized by the Junction City Police Department from DION or the 2002 GMC Sierra pickup truck DION was driving at the time of his arrest on June 18, 2013:

| **Description** | **Referred to herein as** |
|---|---|
| 1. Garmin nuvi 2450 GPS device, serial no. 269008542, marked as Exhibit 1B44. | Target GPS Device; Photograph in Attachment A. |
| 2. Lenova laptop, serial no. L3-N5656, marked as Exhibit 1B45. | Target Laptop Computer; Photograph in Attachment A. |
| 3. Apricorn portable hard drive, serial no. 5VJCZLKO, marked as Exhibit 1B49. | Target Storage Device; Photograph in Attachment A. |
| 4. White Apple iPhone, model no. A1387, marked as Exhibit 1B43. | Target Telephone; Photograph in Attachment A. |
| 5. Three USB Thumb Drives, marked as Exhibit 1B51, 1B52 and 1B53. | Target Storage Devices 1B51, 1B52, 1B53. |

    b.    An office space previously occupied by DION on his behalf and on behalf of the "Dion Family Trust," located within suite 3802, at 4 Longfellow Place, Boston, Massachusetts, which is more fully described in Attachment A, and believed to contain evidence of the Target Offenses. DION's office (hereinafter, the "Target Location") is located within suite 3802, among office spaces rented by the law firm Callas Felopulos & Ditelberg LLP.

    c.    A desktop computer belonging to and used by DION, which is believed to be located at an open cubicle area inside the common area of the office space rented by the law firm Callas Felopulos & Ditelberg LLP, 4 Longfellow Place, Boston, Massachusetts. The desktop computer, (hereinafter, the "Target Computer") is depicted in a photograph in Attachment A.

3

6. In this affidavit, the telephone for which a warrant is sought is referred to as the "Target Phone"; the computers as the "Target Laptop Computer" or "Target Computer" the GPS device as the "Target GPS Device"; and the external hard drive and three USB thumb drives, a/k/a flash drives or memory sticks, collectively as the "Target Storage Devices." The Storage Devices are all manufactured and designed to store data, information, documents and records that can be transferred from one computer to another or to other computing devices. Set forth below are facts that supply probable cause to believe that each of these items and the Target Location contain evidence of the Target Offenses.

7. I have been the case agent in this investigation. During my work on this investigation, I have reviewed reports prepared by agents and discussed this case and other related cases with agents and local law enforcement officers who have been involved in these investigations. I submit this affidavit based upon personal knowledge derived from my participation in this investigation, and information that I have received from a variety of other sources, including law enforcement officers and agents, witness interviews, public records, and documents discussed herein. I have not included every fact known to me, but rather, I have included the facts necessary to establish probable cause.

8. I am familiar with the methods used by drug traffickers to launder their illicit proceeds. Based on my training and experience, I am familiar with many aspects of money laundering techniques used by narcotics traffickers. Specifically, I have investigated structuring cases, in which a narcotics trafficker uses cash in small sums (under the $10,000 reporting requirement) as bank or credit card deposits or as a purchase price for a seemingly innocent piece of property or other item of value. I have also investigated the use of legitimate businesses or

4

accounts as "fronts" for drug proceeds.

9. In my training and experience, I know it is common for persons involved in drug trafficking and suspicious financial activities to maintain records of their activities, such as ledgers, bank account records, contact information for co-conspirators, drug proceeds, books, records, receipts, notes, emails, ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Furthermore, in my training and experience, I have learned that it is common for persons involved in drug trafficking and money laundering to store these items in their cellular telephones, computers, cameras, homes, and in locations and electronic devices frequently used in furtherance of their drug trafficking and money laundering activities.

**Factual Background**

10. On June 18, 2013, Marshall H. DION, was stopped for speeding by Officer Nicholas Blake of the Junction City Police Department ("JCPD") in Kansas, while driving a 2002 GMC Sierra pickup truck with Colorado license plates, tinted windows and a covered camper over the bed. The entire car stop and interview was audio and video recorded by recording devices, which were mounted inside and outside of Officer Blake's cruiser. Officer Blake, a trained K9 Officer, had his K9 Figo in the rear of his cruiser at the time of the stop.

11. During the JCPD roadside interview, DION presented Officer Blake with a valid Arizona driver's license, and explained that he was traveling from Pennsylvania en route to his home in Tucson, Arizona. DION stated that he had residences in Massachusetts and Arizona and owned property in Colorado.

12. DION further explained that he had traveled from Tucson, Arizona, to Yardley,

Pennsylvania to meet with his certified public accountant ("CPA"). He stated that he had stayed in Pennsylvania for three days and was headed home to Tucson. DION claimed that he traveled to Pennsylvania to meet with his CPA because she gives him "a break" on the charges. DION also said that he had slept at his CPA's house while in Yardley, although he denied being romantically involved with her.

13. When asked, DION admitted that he had been arrested for possession of marijuana about 20 years ago. He said he was no longer involved in the drug business.

14. Officer Blake detected signs of deception throughout the interview, including a travel itinerary that did not seem to make sense. Officer Blake also noted that DION appeared nervous, even after Officer Blake told him that he would only be issuing a warning citation. DION continued to talk to Officer Blake after he had been issued a warning citation for speeding and consented to a search of his truck.

15. Upon opening the rear gate of the truck, Officer Blake observed several items that appeared to be random junk items and a refrigerator. When Officer Blake asked DION where these items had come from, DION told the officer that he picked them up in Boston. This was the first time that DION had mentioned being in Boston. As Officer Blake continued methodically to unload the items from the rear of DION's truck, DION said he wanted to get back on the road. Officer Blake asked DION for consent to walk his K9 around the exterior of DION's truck, and DION agreed.

16. Officer Blake conducted an exterior sniff of DION's vehicle with his K9. The K9 indicated around the area of the front driver side wheel well and in the area of the front bed on the passenger side. When asked, DION quickly denied that he had any illegal drugs in his truck. When asked if he had large amounts of United States currency with him, DION replied, "Pardon

6

me?" DION answered that he did not, stuttered some unintelligible words, and then said he might have a couple deposits with him totaling $6,000.

17. Officer Blake continued the search of DION's truck and located two FedEx boxes stuffed in front of the refrigerator. These boxes contained a large amount of United States currency. A second officer, who was assisting the search, located two additional boxes beside the refrigerator, which also contained a large amount of United States currency. Three of these boxes had permanent marker writing on them that read "24 100s." The fourth box was marked "9 100s." A subsequent search revealed that these boxes contained $100 bills wrapped in stacks totaling $10,000 each, with bands that indicated the total. Several other bundles of cash were also located within the truck. A total of $828,220 was recovered from DION's truck, $810,900 of which was in the FedEx boxes.

18. In addition to the cash, JCPD recovered from DION's truck, among other items, the Target GPS Device; the Target Laptop Computer; the Target Storage Devices; the Target Telephone; a set of Arizona license plates that were registered for DION's truck; two padlock keys, one tagged "I-93" and the other "I-95," which were contained inside an envelope along with a piece of paper with a type written note reading "re: Driving Trip: BRING KEYS FOR STORAGE UNIT"; deposit slips with bank account information; detailed travel logs that listed the trips and the routes that DION took between Arizona and Boston (**Exhibit 1**); a "To Do" list for the trip between Tucson and Boston (**Exhibit 2**); a document indicating the states and roads where a FAST LANE toll transponder could be used (**Exhibit 3**); a printed telephone contact list (**Exhibit 4**); and a mileage chart (**Exhibit 5**).

19. JCPD officers searched the Target Telephone, the Target GPS Device, and the Target Laptop Computer, all of which were recovered from DION's truck at the time of his

arrest, without a search warrant. To my knowledge, no information recovered from the JCPD search of the Target Telephone has been shared with the FBI. JCPD later obtained a state court authorized warrant to search the Target Laptop Computer and a more extensive search was conducted pursuant to that warrant. The JCPD sent the FBI a disc containing the evidence retrieved from the Target Laptop Computer pursuant to the state search warrant; however, much of the information could not be viewed because of the format of some of the files. To my knowledge, none of the Target Storage Devices has been searched. As indicated below, the JCPD provided the DEA and FBI with information obtained from the search of the Target GPS Device. For the purposes of this Affidavit, the government is not relying on any information or evidence obtained by the JCPD searches of the Target Telephone, Target Laptop Computer, or Target GPS Device to establish probable cause for any of the Target items sought to be searched.

20. JCPD notified the Tucson, Arizona DEA office about the traffic stop and subsequent arrest of DION. DEA, in turn, shared the information with HSI agents in Tucson, Arizona. On June 27, 2013, an HSI agent contacted me and informed me that JCPD had seized approximately $800,000 from a vehicle driven by Marshall DION and that DION had been in Boston prior to the stop.

21. Acting on this information, I called Officer Blake, who informed me that he had stopped DION for speeding, that DION had consented to a search of his truck, and that a K9 had "indicated" on DION's truck. Officer Blake also informed me that the search of DION's truck revealed that he was transporting approximately $827,320 in U.S. currency, and that DION was charged with transporting drug proceeds, a violation of Kansas state law. The JCPD provided the FBI and DEA with copies of documents found in DION's truck, including the attached Exhibits 1-5.

22. The JCPD also provided the FBI and DEA with certain locations they obtained from their warrantless search of the Target GPS Device. The location information was used in conjunction with other evidence to secure search warrants in Massachusetts and Arizona. As indicated above, the government is not relying on information or data obtained from the JCPD searches of the Target GPS Device, the Target Telephone, or the Target Laptop Computer to establish probable cause for the warrants I am seeking in this affidavit. After the federal criminal complaint was issued, all evidence recovered from the search of DION's truck was transferred to the Boston FBI office.

23. From June 18, 2013 until approximately August 5, 2013, DION was detained on the state charges in Kansas. As detailed herein, DION made several calls during this period of time, all of which were recorded. On June 28, 2013, DION placed several calls from jail to co-defendant Glen Freeman at (978) 887-9607, which is the number listed in Exhibit 4 as Freeman's home phone number. DION left several messages asking Freeman to contact "Dennis" or "Marc" because "they needed some help" from Freeman. Based on the investigation to date and for reasons set out in this Affidavit, I believe DION was referring to attorneys Dennis Ditelberg and Marc Cantor when he referred to "Dennis or Marc." Dennis Ditelberg is a partner in the law firm Callas Felopulos & Ditelberg LLP, which is located at 4 Longfellow Place, Boston, Massachusetts. He is also DION's former brother-in-law. Marc Cantor is also an attorney in the law firm. The law firm rents an entire suite of offices, some of which are sublet to tenants. One of those offices, the Target Location, was used by DION.

24. Later on June 28, 2013, DION made another recorded jail call and spoke with Freeman. Freeman told DION that he was "trying to call Dennis," but he had spoken to "Marc" instead. DION told Freeman that Marc "don't know anything." DION then told Freeman to call

9